IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JUDY L. HUDMAN,

      Plaintiff,

vs.                                                  Civil No. 08-643 RLP

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,

      Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff, Judy L. Hudman ("Plaintiff" herein) filed her Complaint on July 9, 2008 seeking review of the final decision of the Commissioner of Social Security ("Commissioner" herein) denying her application for disability insurance benefits. [Docket No. 1]. The matter before the court is Plaintiff's Motion to Reverse or Remand Administrative Agency Decision. [Doc. No. 15]. The matter has been fully briefed. For the reasons stated herein, the Administrative Agency Decision is **REVERSED** and the matter is **REMANDED** for additional proceedings.

**I.    PROCEDURAL HISTORY**

Plaintiff submitted her claim for Social Security Disability Insurance benefits on November 14, 2001, alleging that she became disabled on October 21, 2001. (Tr. 211). Her claims were denied both initially and at the reconsideration level. (Tr. 108, 102.) Plaintiff requested a hearing before an administrative law judge ("ALJ" herein), which was conducted on December 2, 2002. (Tr. 149, 75-107). ALJ David R. Wurm issued a fully favorable decision. (Tr. 113-119). The Appeals Council reviewed this decision on its own motion, and on May 20, 2003 remanded to the ALJ for further evaluation. (Tr. 161-165). A second administrative hearing was held on October 12, 2004. (Tr. 54-74). On January 24, 2005, ALJ Wurm issued a decision denying Plaintiff's claim for

benefits.  (Tr. 125-136).   Plaintiff sought review by the Appeals Council.  On April 5, 2005 the Appeals Council granted the request for review, remanding to the ALJ with specific instructions (Tr. 178-180).  The third administrative hearing was conducted on October 4, 2006 by ALJ Carol W. Connor.  (Tr. 22-53).  ALJ Connor issued a written decision on January 18, 2008 denying Plaintiff's claim.  (Tr. 535-552).  The Appeals Council declined review on May 9, 2008, thereby making the decision of ALJ Connor the final decision of the Commissioner for purposes of judicial review.  (Tr. 9-12).  Plaintiff filed this Complaint on July 10, 2008 seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. §405(g).

## II.    LEGAL STANDARDS

The court's standard of review is set forth in 42 U.S.C. §504(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." I review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994).  A claimant shall be determined to be under a disability only if she can establish that she has a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents her from engaging in substantial gainful activity. The physical or mental impairment must be of such severity that the claimant is unable able to perform past relevant work or any other type of substantial gainful work existing in the national economy. 42 U.S.C. §423(d).

The Commissioner has established a five-step sequential process to evaluate whether a claimant is disabled. 20 C.F.R. § 404.1520*; Allen v. Barnhart,* 357 F.3d 1140, 1142 (10th Cir .2004)*; Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity, whether she has severe

impairments, and whether the severity of her impairments meets or equals the severity of any impairment in the Listing of Impairments [20 C.F.R., Pt. 404, Subpt. P, App. 1]. Id. at 750- 51. If claimant's impairments do not meet or equal the severity of a listing, the Commissioner assesses her residual functional capacity ["RFC"]. 20 C.F.R. §§ 404.1520, 416.920. This assessment is used at both steps four and five of the process. *Id.* After assessing claimant's RFC, the Commissioner evaluates steps four and five, in order to determine whether the claimant can perform her past relevant work, or whether she is able to perform other work in the national economy. *Williams*, 844 F.2d at 751. In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. *Dikeman v. Halter,* 245 F.3d 1182, 1184 (10th Cir.2001); *Williams*, 844 F.2d at 751 n. 2. At step five, the burden shifts to the Commissioner to show other jobs in the national economy within claimant's capacity. *Id.*; *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir.1999).

### III.    VOCATIONAL AND MEDICAL BACKGROUND

Plaintiff was born on October 3, 1965. She was enrolled in special education classes starting in the 2nd grade, and dropped out of school in the 11th grade. (Tr. 397). She subsequently obtained training as a nurses aide through the Department of Vocational Rehabilitation, and worked in that capacity from 1989 until October 2001. (Tr. 253, 215, 397).

    A)    Shoulder Impairment

Plaintiff injured her right shoulder in 1995 (Tr. 351), and suffered a reinjury in late 2000 or early 2001. (Tr. 317). Her intermittent, continued symptoms have been diagnosed as bursitis (Tr. 314) or probable tendonitis. (Tr. 322). Plaintiff's orthopedic surgeon, Gary Barham, M.D., treated her conservatively, with physical therapy, steroid injections and non-steroidal anti-inflammatory medication. (Tr. 313-316, 318, 275-276, 278-280). On September 10, 2001 Dr. Barham

recommended that Plaintiff observe a 40-50 lbs. lifting restriction. (Tr. 313). Shortly thereafter Plaintiff quit her job because of concerns about her right shoulder (Tr. 397-398, 209), and cites October 21, 2001 as her date of onset of disability.

Two other physicians have examined Plaintiff's shoulder. The March 14, 2002, examination by Nicholas Nillo, M.D., documented crepitus and mild tenderness in the right shoulder, but no other abnormalities[1]. Based on these findings, he recommended a 50 lb. lifting limitation. (Tr. 322, 324).

The final examination of record was conducted by Carlos Pastrana, M.D., on July 8, 2006. He noted limitation of motion in the right shoulder with tenderness to palpation, possibly due to chronic tendonitis, good fine and gross manipulative skills, and full range of motion in the wrists, elbows, forearms and left shoulder. (Tr. 470-472). His report did not address functional limitations.

Plaintiff treats her shoulder problems with non-steroidal anti-inflammatory medication, which she can take without side effects. (Tr. 466-467).

    B)    Osteopenia

Plaintiff has documented osteopenia of her spine and hips which has been intermittently treated with medication. (Tr. 388, 386, 442, 252, 467). She does not have documented osteoporosis, nor has she suffered any bone fractures.

    C)    Mental and Intellectual Impairments

---

[1] Upper extremities: Both hands can be fully extended, fists made and fingers opposed without any difficulty. Grips were symmetrical and physiological. No asymmetry of the shoulders was detected an no sept off or anterior displacement of the humerus that could be suggestive of dislocation. No crepitus was audible with range of motion, however, when she is at rest crepitus is audible from the right shoulder. There is no restriction of range of motion. Both arms and forearms are essentially symmetrical. Muscle strength is within normal limits without measurable inequality to resisted movements. Tenderness was reported only in the bicipital groove of the right shoulder (mild). (Tr. 322).

Plaintiff was evaluated by Clifford O. Morgan, PhD., in October 1999 when she applied for additional services from the Division of Vocational Rehabilitation. (Tr. 392-400). She consulted him due to concerns that her shoulder injury would prevent her from performing all the job duties required of a nurses aide. Dr. Morgan conducted an interview, mental status examination and administered psychological testing, including testing of intellectual functioning. Her intelligence and aptitude scores placed her within the borderline range of intellectual functioning.[2] Dr. Morgan indicated that Plaintiff had serious problems/severe deficits in reading[3], but would be able to read very simple verbal instructions after she had been trained, might be able to respond to simple written requests, and had a greater ability in arithmetic if performed on paper, not in her head[4]. He felt she suffered from mild cognitive impairment, probably developmental.[5] Testing also indicated that Plaintiff suffered clinical depression. Plaintiff continued to work as a nurses aide for two years after this evaluation, although for all or most of this time at light exertional level. (Tr. 309, 211, 320).

From April through July 2002 Plaintiff was treated at Southwest Counseling Center. Although her initial treatment records are not contained in the administrative file, a summary dated April 2, 2002 indicates a diagnosis of adjustment disorder with mixed anxiety and depressed mood

---

[2] Borderline Intellectual Functioning (DSM-IV Code V62.89) describes an IQ range that is higher than that for Mental Retardation, generally 71-84. Plaintiff scored a Verbal IQ or 74, a Performance IQ 78 and a Full Scale IQ or 74 on the Wechsler Adult Intelligence Scale III. (Tr. 396).

[3] Testing indicated Plaintiff could read and spell at the 1st grade level (Tr. 398).

[4] Testing indicated that Plaintiff was performing at the 4th grade level in arithmetic. (Tr. 398)

[5] Plaintiff states that she has dyslexia (Tr. 80, 59, 225), and has given this history in several medical histories. (Tr. 468, 521, 566, 464). The record contains no objective testing confirming this diagnosis.

with a GAF of 65.[6] (Tr. 329). She reported no problems once she restarted medications for depression and ADHD. (Tr. 440-441). Her care was transferred to Sierra Vista Counseling Center as of August 2002. (Tr. 439). In November 2002 Plaintiff's mental mental status was assessed as normal with euthymic mood.[7] (Tr. 432). On December 10, 2002 Plaintiff's treating social worker at Sierra Vista Counseling Center prepared a diagnostic summary indicating a diagnosis of Major Depressive Disorder, with a GAF of 55[8]. (Tr. 499-501). No comprehensive treatment note accompanies this diagnosis. Shortly thereafter, Plaintiff's GAF rating was increased to 72.[9] On December 19, 2002, Plaintiff was described as euthemic, with no depressive symptoms. (Tr. 522). The primary focus of Plaintiff's treatment at Sierra Vista was coping with the stresses of raising her children.[10] (Tr. 435, 452, 505-523).

There are no records of mental health treatment from December 2003 until June 3, 2005 when Plaintiff was seen and evaluated by Diana Lyon, LPC, PhD., at the Sierra Vista Hospital Counseling Center. Plaintiff complained of difficulty concentrating and staying on task, ADHD

---

[6]The GAF scale is reflected in Axis V of a differential diagnosis. "Axis V is for reporting the clinician's judgment of the individual's overall level of functioning. This information is useful in planning treatment and measuring its impact, and in predicting outcome. The reporting of overall [psychological, social, and occupational] functioning of Axis V is done using the Global Assessment of Functioning (GAF) Scale." See American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders-Text Revision* at 34 ( DSM-IV-TR ), 30 (4th ed.2000) *(DSM-IV(TR)*. A GAF of 65 indicates mild to moderate symptoms or functional limitations. *DSM-IV (TR)* at 34.

[7]Euthymia is a state of mental tranquility and well-being, neither depressed nor manic. *Dorland's Illustrated Medical Dictionary* at 650 (30th ed.2003).

[8]A GAF of 55 indicates moderate symptoms or functional limitations. *DMS-IV (TR)* at 34.

[9]A GAF of 72 indicates no more than slight impairment in social or occupational functioning. *Id*.

[10]Plaintiff's daughter has been diagnosed with ADHD (Tr. 81, 439, 64, 489), and Plaintiff has stated that she has also been diagnosed with a seizure disorder and bipolar disorder. (Tr. 393, 489). The daughter receives SSI based on her ADHD diagnosis. (Tr. 451, 31). She has had at least one psychiatric hospitalization. (Tr. 506, 40). Her behavior causes significant problems in school (Tr. 296, 310, 521, 515) and at home. (Tr. 310, 515, 423, 523). Plaintiff's son has ADHD and cerebral palsy. (Tr. 489, 523).

and pain. (Tr. 488). She was taking no psychotropic medication at that time. On mental status examination Plaintiff was described as alert, oriented x 4, cooperative, with fair memory, stable mood, no agitation, and fair judgment and impulse control. (Dr. 491). She was diagnosed with ADHD- predominantly inattentive type (Tr. 492), assigned a GAF of 41 or 45 [11], and placed on Strattera[12]. (Tr. 486, 492, 498). On subsequent visits to her treating psychiatrist, Richard Barendsen, M.D., Plaintiff indicated Straterra helped (Tr. 484), and that she was "doing well" on this medication. (Tr. 481-482). A mental status evaluation performed by Dr. Barendsen on July 10, 2006 noted no abnormalities. (Tr. 481).

Plaintiff was evaluated by James Schutte, PhD., on July 12, 2006 following the second remand by the Appeals Council. (Tr. 473-477). Plaintiff told Dr. Schutte that she had been depressed for years, had no problems with sleep, that her memory and concentration problems had started 1 ½ years earlier, that she had heard voices telling her 'good things' since she was little, that for two years she had consumed six shots of alcohol nightly, that over the past 2 years she had experienced occasional anxiety triggered by her daughter's behavior, and that prior medications (Ritalin and antidepressants) helped, when she took them. Dr. Schutte reviewed the 1999 evaluation

---

[11]A GAF rating of 41 to 50 indicates serious symptoms or severe impairment in social functioning. *DSM-IV (TR)* at 34. "A low GAF score does not alone determine disability, but is instead a piece of evidence to be considered with the rest of the record." *Petree v. Astrue*, 260 Fed. Appx. 33, 42 (10th Cir. 2007).

[12]A medication used to treat ADHD. www.strattera.com/1_1_about_strattera/about.jsp.

by Dr. Morgan, conducted a mental status examination[13] and administered additional testing.[14] He concluded that Plaintiff had a mildly impaired ability to understand and remember basic instructions due to her history of learning disorder and borderline intellectual functioning; a moderately impaired ability to concentrate and persist at the tasks of basic work due to schizoaffective disorder[15] and a history of borderline intellectual functioning; a mildly impaired ability to interact with the general public and/or co-workers due to schizoaffective disorder, and a moderately impaired ability to adapt to changes in the workplace due to schizoaffective disorder and apparent alcohol dependence. (Tr. 476).

## IV.   VOCATIONAL TESTIMONY

The ALJ obtained testimony from a vocational expert ("VE" herein). The VE identified Plaintiff's prior work as a nurses aide as medium and unskilled. (Tr. 45). The ALJ asked the VE to assume:

> (A)n individual who is the same age, who is – has the same similar education and work history. And consider the following. This individual can follow simple, verbal instructions as well as simple written instructions. This individual is capable of doing simple arithmetic that – on paper. This individual would have no particular on-going exertional problems other than she would not be able to perform her past job as you have characterized it as being medium. However, could perform it from a light perspective. Or job that is the same or similar. Would there by any jobs

---

[13] Casually dressed and well groomed; oriented to person, place and partially to time; able to provide all personal information; cognitive functions appears grossly intact; alert and responsive to surroundings; speech clear and comprehensible, with no apparent deficits; long-term memory did not seem grossly impaired; attention and concentration within normal limits; no hyperactivity noted; thought processes not delusional; did not appear to be attending to internal stimuli during evaluation; mood reserved; affect mildly constricted; eye contact good; cooperative with examiner; appeared open and willing to discuss psychological functioning. (Tr. 475).

[14] WAIS-III Digit Span subtest, scoring in the borderline range, consistent with 1999 testing. Scored adequately on the Rey 15-Items test to screen for gross memory malingering. (Tr. 475).

[15] A combination of schizophrenia and an affective (mood) disorder, either major depression or bipolar disorder. www.webmd.com/schizophrenia/guide/mental-health-schizoaffective-disorder.

8

either her past work or other jobs that such a person could do? . . . I'm asking you as a Vocational Expert, simple verbal and simple written instructions. . . .

(Tr. 46-47).

The VE testified that such an individual would be capable of performing jobs of Companion (light, semiskilled, DOT 309-677.010) ("As a companion which is more like just monitoring. It's not bathing. It's not – you know not dispensing meds or anything. I would still say that she could probably perform that."); Hand folder (light, unskilled, DOT 369-687.018), and Dog bather or shop assistant (light, unskilled, DOT 418-677-010).

## V.   THE ALJ'S DECISION

The ALJ denied Plaintiff's claim at step five of the sequential evaluation process. She found that despite severe mental impairments, variously diagnosed as including dysthymia, generalized anxiety disorder, attention deficit disorder, inattentive type, adjustment disorder with mixed anxiety and depressed mood, depressive disorder, borderline intellectual functioning, learning disorder NOS, and alcohol dependence, and her severe physical impairments of chronic tendonitis of the right shoulder and osteopenia of the spine and hips, Plaintiff retained the physical RFC for light work, and the mental residual functional capacity for work which requires no more than simple, written and verbal instructions and simple paper mathematical calculations. The ALJ further found that Plaintiff was unable to perform her relevant work, but could perform the jobs identified by the VE in response to the ALJ's hypothetical question, which were available in significant numbers in the regional and national economy.

## VI.   ISSUES ON APPEAL

Plaintiff raises the following issues:

A)   Whether the ALJ's Residual Functional Capacity assessment is unsupported by

> substantial evidence, in that it failed to include limitations contained in opinion of psychological consultant James Schutte, PhD.

B) Whether the ALJ erred in the formulation of hypothetical questions posed to the vocational expert

C) Whether the ALJ failed to apply correct legal principles by failing to resolve conflicts between the vocational testimony and occupational data in the Dictionary of Occupational Titles.

## VII. LEGAL DISCUSSION

A) The ALJ applied correct legal principles in the evaluation of Dr. Schutte's opinion, and in assessing Plaintiff's RFC.

Social Security regulations provide on remand from the Appeals Council, the ALJ "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. §404.977(b). In its Remand Order of April 6, 2005 the Appeals Council noted:

> [T]hat great weight was given to Dr. Morgan's medical report dated October 27, 1999, as it was based on a detailed exam and objective testing. The Council notes that this psychological/vocational evaluation is dated approximately 5 years prior to hearing. Further evaluation of the claimant's mental impairment is needed. (Tr. 178).

The Appeals Council then directed the ALJ to:

> Obtain additional evidence concerning the claimant's impairment in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512-1513). The additional evidence will include a consultative mental status examination with psychological testing and medical source statements about what the claimant can still do despite the impairment.
>
> Further evaluate the claimant's mental impairment in accordance with the special technique described in 20 CFR 404.1520a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of

>the functional areas described in  20 CFR 404.1520a(c).

>Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rational with specific references to evidence of record in support of the assessed limitations.  (20 CFR 404.1545 and Social Security Ruling 96.8p[16]).

(Tr. 179).

Plaintiff contends that the ALJ's committed legal error by failing to include all of the mental limitations found by Dr. Schutte in the hypothetical question posed to the VE.  I find that the ALJ complied with the Remand Order, and applied correct legal principles in her evaluation of all medical opinion evidence.

In compliance with the Appeals Council's Remand Order, the ALJ obtained a consultative mental status examination with psychological testing from Dr. Schutte, and received updated mental health records from Sierra Vista Counseling Center/Dr. Barendson.  The ALJ was not required to ignore the detailed exam and objective testing contained  in Dr. Morgan's report or to accept the all of findings in Dr. Schutte's report.  Medical opinions are weighed by evaluation of a number of factors: (1) examining relationship; (2) treatment relationship including the length of relationship and frequency of examination and the nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; (6) any other relevant factors. 20 C.F.R. § 404.1527(d).  These standards apply to the evaluation of opinions of medical consultants hired by the Administration.  20 C.F.R.  § 404.1527(f)(2)(ii).

The ALJ explained in detail her reasons for rejecting portions of Dr. Schutte's opinion, specifically, the limitations Dr. Schutte ascribed to Plaintiff's  ability to concentrate and persist in

---

[16]*Assessing Residual Functional Capacity in Initial Claims*, defining "residual functional capacity," and  mandating identification of an individual's functional limitations or restrictions,  and assessment of work-related abilities on a function by function basis.

11

the mental demands and tasks of basic work. First, the ALJ noted that on mental status examination, Dr. Schutte found no deficits in attention and concentration. (Tr. 543, citing to Tr. 475). The ALJ then stated:

> The claimant's current treating source documents a normal mental status examination when the claimant takes her medication, Strattera (citing to Tr. 481). She is able to attend to daily activities independently and cares for her two dependent children with significant mental and physical impairments (citing to Tr. 489). In comparison, the consultative psychological examination by Dr. Schutte in July 2006 at the request of the Administration suggests her mental impairments limit her ability to concentrate and persist in the mental demands and tasks of basic work. This conclusion is based upon Dr. Schutte's review of the psychological/vocational evaluation performed by Clifford Morgan, PhD in October 1999 (citing to Tr. 392-400). The undersigned has considered these one time evaluations, but has afforded the most weight to the treatment records of her current mental health provider, Richard Barendsen, M.D., that reflect little in the w ay of mental limitations when the claimant is complaint (sic) with psychotropic medication. Furthermore, a close reading of Dr. Morgan's 1999 report reflect (sic) the claimant is capable of the mental demands of simple, written and verbal instructions and simple mathematical calculations, mental limitations adopted by the undersigned in formulation of the claimant's residual functional capacity.

(Tr. 544-545).

> ...(T)he undersigned has afforded the most weight to the findings described in the psychological/vocational evaluation of the claimant by Clifford O. Morgan PhD. dated October 27, 1999. These findings are most consistent with the treatment records dated June 2002 through December 2003 and June 2005 through July 2006. The claimant reports doing well with psychotropic medication, with her primary problems as related to the stresses associated with the care of two physically and mentally challenged children.

(Tr. 549).

In her discussion of Plaintiff's credibility, the ALJ stated additional reasons for rejecting limitations assessed by Dr. Schutte. Despite her developmental cognitive abilities, Plaintiff had been able to successfully perform the mental demands of the semi-skilled job of nurses aide for 11 years, quitting not because of the mental demands of the job, but because of shoulder pain. (Tr. 549). The ALJ further noted a discrepancy in the medical record and the history Plaintiff gave Dr.

Schutte. Dr. Schutte assigned significant functional limitations based on his provisional diagnosis of alcohol dependence. This diagnosis was based on Plaintiff's history of consuming 6 shots of alcohol nightly for the two years prior to July 2006. As noted by the ALJ, no treating source documented this level of alcohol use, and indeed, prior and concurrent histories given by Plaintiff controvert it.[17]

Finally, the ALJ rejected Dr. Schutte's diagnosis of schizoaffective disorder[18] as she did not include that diagnosis in the list of severe impairments she found to exist. (Tr. 541). Although the ALJ could have been more detailed in explaining why she rejected this diagnosis, it is clear the rejection was based on the fact that no other treating or examining source had made this diagnosis, and Plaintiff's most recent treating psychiatrist, who had seen her numerous times, listed only a diagnosis of ADHD or ADD. (Tr. 543).

Dr. Schutte's opinion was clearly inconsistent with other substantial evidence of record. The ALJ ultimately must weigh and resolve evidentiary conflicts, and the court cannot reweigh evidence. *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir.2000); *see also White v. Barnhart*, 287 F.3d 903, 909 (10th Cir.2001) (court will not second-guess ALJ decision).

Accordingly, the court finds that the ALJ properly considered all of the medical evidence,

---

[17]In 2002 and 2003 Plaintiff stated to medical care providers that she consumed no alcohol. (Tr. 320, 462). In June 2005, Plaintiff stated to Diana Lyon, LPC, PhD., that she drank a "toddy" every night, and had for most of her life. She further indicated the toddy contained 50¢ worth of alcohol. Dr. Lyons then had Plaintiff complete an alcohol screen test, concluding that Plaintiff had "no apparent problem" with alcohol use. (Tr. 494-495, 488, 492). On July 8, 2006, Plaintiff told Dr. Pastrana that she had two drinks per day. (Tr. 470).

[18]Dr. Schutte did not explain why he reached this diagnosis. The court assumes it was based on Plaintiff's history of hearing voices though out her life, "telling her good things." (Tr. 474). The court notes that the administrative record contains 45 mental health evaluations, counseling sessions or treatment notes, other than Dr. Schutte's. Many of these notes include mental status examinations. None records a history of hearing voices.

properly evaluated the various conflicting medical records, and applied correct legal principles rejecting portions of Dr. Schutte's opinion which were inconsistent with other substantial evidence of record.

       B)       The ALJ Posed a Proper Hypothetical Question to the VE.

Plaintiff contends that the ALJ posed an inadequate hypothetical question to the VE. Specifically, Plaintiff contends that the ALJ was required to include the limitations found by Dr. Schutte.

The ALJ's hypothetical question to the vocational expert must reflect with precision all of Plaintiff's impairments that are substantially supported by the record. *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir.1996). The ALJ was not required to include every limitation claimed by Plaintiff, but only those limitations that she found to exist based upon substantial evidence in the record. *Id.*; *Hintz v. Chater*, 913 F.Supp. 1486, 1495 (D.Kan.1996). The ALJ rejected the limitations assessed by Dr. Schutte which conflicted with other substantial evidence of record. The Court has affirmed that finding.

Plaintiff also contends, somewhat in passing, that the hypothetical was incomplete because it did not include all of her physical impairments, that is, did not reference the tendonitis in her shoulder or the osteopenia of her spine and hips. There is no evidence of any functional limitation resulting from Plaintiff's diagnosis of osteopenia. As to shoulder tendonitis, the only medical evidence of any limitation arising from that condition is that her ability to lift is reduced to 40-50 lbs. The ALJ's hypothetical question assumed a claimant limited to light exertional work which assumes the ability to lift 20 lbs. occasionally and 10 lbs. frequently. 20 C.F.R. §1567(b). Accordingly, the ALJ did include all of Plaintiff's physical impairments in the hypothetical question.

14

C)   The ALJ Erred by Failing to Ask the VE If Her Opinion Conflicted
     with Occupational Data in the Dictionary of Occupational Titles.

The VE testified that an individual of Plaintiff's age, with similar education and work history, who was **able to follow simple verbal and written instructions** and perform simple arithmetic on paper, would be able to perform the jobs of Companion, Hand folder and Dog bather or shop assistant. (Emphasis added). (Tr. 46-47). Companion and Dog bather require a reasoning level of 3, while Hand folder requires a reasoning level of 2. DOT 309.677-010; 418-677-010; 369-687.018.

The ALJ did not ask the VE whether there was any conflict between her testimony and the Dictionary of Occupational Titles. (Tr. 45-49). This was error. In *Haddock v. Apfel*, 196 F.3d 1084, 1092 (10th Cir. 1999), the Tenth Circuit Court of Appeals held, ". . .[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." This holding was subsequently codified in Social Security Ruling 00-4p, effective December 4, 2000. West's Soc. Sec. Rep. Serv., Rulings, 242 (Supp.2008).[19]

The ALJ's failing is not harmless error, as an apparent conflicts exists.

The Dictionary of Occupational Titles sets out General Educational Development (GED) ratings for each job listed. GED has three components, reasoning development, mathematical

---

[19]SSR 00-4p places two duties on the ALJ. First, the ALJ must "identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs ... and information in the Dictionary of Occupational Titles (DOT), including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO)." Id. (emphasis added). Second, the ALJ must "[e]xplain in the determination or decision how any conflict that has been identified was resolved." Id. Thus, SSR 00-4p places the affirmative responsibility on the ALJ to "[a]sk the VE ... if the evidence he or she has provided conflicts with information provided in the DOT," and where VE "evidence appears to conflict with the DOT, ... [to] obtain a reasonable explanation for the apparent conflict." Id. at 246.

development, and language development.  Appendix C, Dictionary of Occupational Titles ("DOT") (U.S. Dep't of Labor, 4th ed.1991).  At issue here is reasoning development.  Reasoning development - level 1 provides that the person be able to "apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." Level 2 provides that a person be able to "apply commonsense understanding to carry out **detailed but uninvolved written or oral instructions**.  Deal with problems involving a few concrete variables in or from standardized situations." (Emphasis added).  Level 3 provides that a person be able to "apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form.  Deal with problems involving several concrete variables in or from standardized situations."  *DOT, id.*

In *Hackett v. Barnhart*, 395 F.3d 1168, 1175 (10th Cir.2005), the Tenth Circuit held that a limitation "for simple and routine work tasks" was consistent with the demands of level 2 reasoning. The hypothetical question posed in this case, however, is  more  restricted than that posed in *Hackett*. The reasoning development description for level 1 appears closest to the ALJ's requirement that Plaintiff be limited to simple verbal and written instructions, as level 2 requires the ability to carry out "detailed but uninvolved" tasks or instructions.

## VIII.  CONCLUSION

Whether to remand a case for additional fact-finding or for an immediate award of benefits is within the discretion of the district court. *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir.1993); *Taylor v. Callahan*, 969 F.Supp. 664, 673 (D.Kan.1997) (*citing Dixon v. Heckler*, 811 F.2d 506, 511 (10th Cir.1987)). In 2006, the Tenth Circuit noted two factors relevant to whether to remand for an immediate award of benefits: Length of time the matter has been pending and "whether or not 'given the available evidence, remand for additional fact-finding would serve [any]

useful purpose but would merely delay the receipt of benefits." *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir.2006)(*quoting Harris v. Sec'y of Health & Human Servs.*, 821 F.2d 541, 545 (10th Cir.1997); and *citing Sisco v. Dep't of Health & Human Servs.*, 10 F.3d 739, 746 (10th Cir.1993)).

The decision to direct an award of benefits should be made only when the administrative record has been fully developed and when substantial and uncontradicted evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits. *Gilliland v. Heckler*, 786 F.2d 178, 184, 185 (3rd Cir.1986). However, the Commissioner is not entitled to adjudicate a case *ad infinitum* until he correctly applies the proper legal standard and gathers evidence to support his conclusion. *Sisco*, 10 F.3d at 746.

Here, the first factor weighs in favor of remand for an immediate award of benefits. Plaintiff's application for benefits has been pending since November 2001. Nonetheless, I cannot say that there is substantial and uncontradicted evidence on the record that indicates that plaintiff disabled. I believe additional fact-finding would serve a useful purpose.

**IT IS HEREBY ORDERED** that the matter is **REVERSED**. The Commissioner is ordered to **REMAND** this case to the Administrative Law Judge for further proceedings consistent with this opinion, specifically:

(1) The ALJ shall pose hypothetical questions to a vocational expert, with specific instructions that the vocational expert address reasoning development as well as the other components of the GED.

(2) The ALJ shall question the VE has to any discrepancy between his or her opinion and the DOT.

(3) The ALJ shall obtain from the VE a reasonable explanation for any apparent conflict.

**IT IS FURTHER ORDERED** that the Commissioner conduct these proceedings on an

expedited basis.

      **IT IS SO ORDERED.**

                                                    **Richard L. Puglisi**
                                          **United States Magistrate Judge**